FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 01, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| TYLER JAMES THOMAS LANKFORD,<br><br>                Plaintiff,<br><br>      v.<br><br>CITY OF PULLMAN; COUNTY OF WHITMAN; STATE OF WASHINGTON; OFFICER JOSHUA BRAY; OFFICER BRIAN CHAMBERLAIN; DETECTIVE TODD DOW; OFFICER ALEX GORDON; SERGEANT SAM SOREM; OFFICER GREG UMBRIGHT; OFFICER JUSTIN DEROSIER; OFFICER MIKE PETLOVANY; and DOES I-X,<br><br>                Defendants. | No.   2:16-CV-00377-SMJ<br><br>ORDER RULING ON SUMMARY JUDGMENT MOTIONS |

## INTRODUCTION

On July 26, 2015, Officers contacted Plaintiff Tyler Lankford at his hotel room in the Quality Inn to take him into protective custody and deliver him to a mental health crisis stabilization center. After speaking to negotiators for approximately an hour, Lankford surrendered himself in the hotel hallway and was

ORDER RULING ON
SUMMARY JUDGMENT MOTIONS **-** 1

immediately placed in handcuffs and removed from the scene. SWAT officers then conducted a brief, visual search of Lankford's hotel room.

Lankford asserts that the "sweep" of his hotel room violated state law and his Fourth Amendment rights. He alleges Fourth Amendment claims against SWAT Officers Mike Petlovany and Justin DeRosier under 42 U.S.C. § 1983 as well as state law claims for trespassing, conversion, and false arrest and imprisonment. Lankford also asserts these claims against Washington State and Whitman County under a theory of respondeat superior liability.

Defendants Petlovany and Washington State move for summary judgment on Lankford's § 1983 and state law claims, ECF No. 53. Defendants DeRosier and Whitman County move for summary judgment on the same issues. ECF No. 49. Lankford filed a motion for partial summary judgment as to Defendant DeRosier's and Whitman County's liability on the § 1983 claims, ECF No. 53, and filed a substantially identical motion as to Defendant Petlovany and Washington State, ECF No. 126. Because all four motions involve the same basic issues, this Order addresses the motions together.

**UNDISPUTED FACTS**

Officer Petlovany is a police officer at Washington State University. He has also been a member of the joint Whitman County Regional SWAT team since

2011. Deputy DeRosier is a deputy with the Whitman County Sherriff's Office and a member of the SWAT team. Both Officer Petlovany and Deputy DeRosier responded to the SWAT call-out to the Quality Inn on July 26, 2015.

When Officer Petlovany and Deputy DeRosier arrived on the scene, they were advised that the call was for felony harassment and a welfare check. The computer aided dispatch (CAD) record available to officers indicated that Lankford was heavily armed, had mental disorders, had been making graphic threats, and was paranoid.

Before contacting Lankford, the SWAT team cleared all patrons and hotel employees from the rooms and area around Lankford's room and set up a safety perimeter. Negotiators then spoke with Lankford to convince him to come out of the hotel room. Negotiators asked Lankford whether he had explosives or weapons. He responded that he had no explosives, but would not comment on whether he had weapons. After some time, negotiators convinced Mr. Lankford to come out into the hall.

When Lankford entered the hallway, he was placed in handcuffs and removed from the scene. Incident to Lankford being placed into custody, the SWAT team was directed to conduct a protective sweep of Lankford's hotel room. Officer Petlovany and Deputy DeRosier assumed their positions in a safety formation including several other SWAT officers and advanced towards the hotel

room door. When Officer Petlovany and Deputy DeRosier reached the hotel room door, it was already open. Officer Petlovany and Deputy DeRosier entered the room and looked for any persons in the room and any weapons or other safety hazards. Officer Petlovany and Deputy DeRosier did not touch anything in the room and were in the room for a matter of seconds. Officer Petlovany and Deputy DeRosier did not know if the search was with or without Lankford's consent.

## LEGAL STANDARD

Summary judgment is appropriate if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once a party has moved for summary judgment, the opposing party must point to specific facts establishing that there is a genuine dispute for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). If the nonmoving party fails to make such a showing for any of the elements essential to its case for which it bears the burden of proof, the trial court should grant the summary judgment motion. *Id.* at 322. "When the moving party has carried its burden under Rule [56(a)], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (internal citation omitted). When considering a

motion for summary judgment, the Court does not weigh the evidence or assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## DISCUSSION

### A. Officer Liability

Both Officer Petlovany and Deputy DeRosier were members of the SWAT team that conducted the initial search of Lankford's hotel room after he was taken into protective custody. Lankford asserts both Fourth Amendment claims under § 1983 and state law claims against the officers. These claims are addressed in turn below.

#### 1. The "sweep" of Lankford's hotel room violated his Fourth Amendment rights

Warrantless entries into a home or dwelling are presumptively unreasonable. *Welsh v. Wisconsin*, 466 U.S. 740, 748 (1984). However, courts recognize several exceptions under which a warrantless entry may be reasonable under the Fourth Amendment. Defendants argue that several of these exceptions apply to justify the search of Lankford's hotel room immediately after he was taken into custody. Specifically, Defendants argue that the search is justified under the protective search incident to arrest exception, the protective sweep exception, the emergency aid exception, and the exigent circumstances exception.

However, none of these exceptions apply. The warrantless search of Lankford's hotel room therefore violated his Fourth Amendment rights.

### a. Search Incident to Arrest and Protective Sweep

As an initial matter, it is important to distinguish between two closely related exceptions to the warrant requirement: the protective search incident to arrest and the protective sweep. *See United States v. Lemus*, 582 F.3d 958, 963 n.2 (9th Cir. 2009) ("[W]e refer to the search of immediately adjoining areas . . . as a 'protective search incident to arrest' to distinguish it from the broader 'protective sweep.'" (citing *Maryland v. Buie*, 494 U.S. 325 (1990))). A protective search incident to arrest permits officers to search an area immediately adjoining the arrest area without reasonable suspicion or probable cause. *Id.* The protective sweep exception allows officers to conduct a limited visual inspection of areas outside the immediate arrest area. *United States v. Paopao*, 469 F.3d 760, 766 (9th Cir. 2006). Unlike the search incident to arrest exception, the protective sweep exception requires that officers have reasonable suspicion, based on specific articulable facts, to believe that the area to be search may harbor an individual who poses a danger to those on the scene. *Id.*

The initial search of Lankford's hotel room does not fall under the protective sweep exception because officers lacked reasonable suspicion that a person in the hotel room presented a danger. For an officer to harbor a reasonable

suspicion of danger there must be "articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Buie*, 494 U.S. at 334. Here, Defendants can point to no such facts. The officers cleared the rooms surrounding Lankford's before initiating contact and did not report seeing or hearing anything that would suggest a person may be hiding in Lankford's room. Further, none of Lankford's conversations with his relatives or with police indicated that he was working in concert with another person.

The search of Lankford's hotel room also cannot be justified as a protective search incident to arrest. Although officers do not require probable cause to conduct a protective search incident to arrest, Ninth Circuit case law indicates the exception must be predicated upon an arrest. *See United States v. Reid*, 226 F.3d 1020, 1027 (9th Cir. 2000) (holding that a search was not justified under the protective search incident to arrest exception when a subject was detained, but not arrested, in an adjoining area). Although Lankford was detained, he was not under arrest at the time of the search. Accordingly, the protective search incident to arrest exception does not apply.

### b. Emergency Aid

Defendants next argue that the search was justified by the emergency aid exception. The emergency aid exception to the warrant requirement permits officers to enter property without a warrant if they have an objectively reasonable belief that an individual is in need of medical attention or is in imminent danger. *United States v. Snipe*, 515 F.3d 947, 952 (9th Cir. 2008). Here, there was nothing to suggest that any person other than Lankford was in the hotel room. Moreover, any danger Lankford posed to himself subsided when he was handcuffed and taken into protective custody. The record therefore cannot support the application of the emergency aid exception.

### c. Exigent circumstances

Finally, Defendants assert that the search was justified under the exigent circumstances exception. Under this exception, officers may conduct a warrantless search when the needs of law enforcement are so compelling that the warrantless search is objectively reasonable under the Fourth Amendment. The Ninth Circuit has defined those situations as (1) the need to prevent physical harm to the officers or other persons, (2) the need to prevent the imminent destruction of relevant evidence, (3) the hot pursuit of a fleeing suspect, and (4) the need to prevent the escape of a suspect. *See United States v. Struckman*, 603 F.3d 731 (9th Cir. 2010). Here, none of the exigent circumstances were present. Lankford was detained and

no longer a flight risk. Because Lankford was the only person staying in the hotel room, there was no risk of destruction of evidence. The most plausible argument was that the hotel room could contain an explosive device that could endanger officers or the public. However, the facts in the record do not give rise to a reasonable fear that Lankford possessed an explosive device.[1]

### 2. Officer Petlovany and Deputy DeRossier are entitled to qualified immunity on Lankford's Fourth Amendment claims.

An officer is entitled to qualified immunity unless, under the circumstances, a reasonable officer would have known the officer's actions violated clearly established law. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Where, as here, the officer did not hold a leadership position in the search, the qualified immunity analysis is limited to whether the officer acted reasonably in relying on the representations of his superiors and in executing the search. *See Ramirez v. Butte-Silver Bow Cty.*, 298 F.3d 1022, 1028 (9th Cir. 2002).

---

[1] During a phone conversation with Lankford, Lynch stated that she was worried that Lankford might use a gun to harm someone in his agitated state and suggested that situations involving guns usually end with one or more people getting hurt or killed. Lankford stated that "[i]f I had the intention to do harm to somebody and guns were illegal, I'd do it with a baseball bat or, you know, maybe I would make a gun. I could go to a hardware store and build a mortar I could build an area denial weapon with stuff from the hardware store." Lankford did not indicate that he had actually constructed a mortar and there was no evidence that he had recently purchased anything from the hardware store. The record therefore does not support a reasonable fear that Lankford possessed a mortar based on this statement alone.

Although the search of Lankford's room violated Lankford's Fourth Amendment rights, Officer Petlovany and Deputy DeRosier are nonetheless entitled to qualified immunity because it was not unreasonable for them to rely on the direction of their superiors in conducting the protective sweep. Officer Petlovany and Deputy DeRosier did not hold leadership positions on the SWAT team. They were not privy to the conversations between Lankford and the negotiators. They did not know whether Lankford had indicated others might be in the room with him, or whether he had consented to the search. Officer Petlovany and Deputy DeRosier knew only that the commanding officers ordered them to conduct a protective sweep of the room.

Both Officer Petlovany and Deputy DeRosier conducted the search reasonably. The officers understood the nature and scope of the search and limited their search accordingly. The entire search was very brief and included only a visual sweep of the room. The officers did not disturb Lankford's belongings or search in areas that could not reasonably harbor a person.

Because Officer Petlovany and Deputy DeRosier are entitled to qualified immunity on Lankford's Fourth Amendment claims, his claims fail as a matter of law. Accordingly, Defendants are entitled to summary judgment on these claims, as well.

### 3. Lankford cannot sustain a prima facie case for conversion or false arrest and imprisonment.

Lankford's claims for conversion and false arrest and imprisonment fail as a matter of law. Officer Petlovany and Deputy DeRosier did not touch Lankford's belongings or otherwise interfere with his ownership interest in his property. Likewise, the officers were not involved in Lankford's detention or arrest. Accordingly, summary judgment for Officer Petlovany and Deputy DeRosier is appropriate on these claims.

### 4. Officers are entitled to qualified immunity on Lankford's trespass claim.

Because the search is not justified by any exception to the warrant requirement, Lankford can establish a prima facie claim for trespass. *See Wallace v. Lewis Cty.*, 137 P.3d 101 (Wash. Ct. App. 2006) (trespass is an intentional tort requiring plaintiff to prove "(1) an invasion of property affecting an interest in exclusive possession, (2) an intentional act, (3) reasonable foreseeability that the act would disturb the plaintiff's possessory interest, and (4) actual and substantial damages"). However, Defendants are entitled to qualified immunity because they acted reasonably in carrying out the search. Defendants argue that the trespass is justified by the exigent circumstances, protective sweep, and emergency aid exceptions to the warrant requirement. For the reasons discussed above, these exceptions do not apply here. Because Defendants make no other arguments, it

appears that that the Fourth Amendment violation may also serve as the basis for a state law trespass claim.

Washington State recognizes state law qualified immunity. An officer is immune from state liability when the officer "(1) carries out a statutory duty, (2) according to procedures dictated to him by statute and superiors and (3) acts reasonably." *Staats v. Brown*, 991 P.2d 625 (Wash. 2000). Here, all three elements are satisfied with respect to Officer Petlovany and Deputy DeRosier.

The SWAT operation of which Officer Petlovany and Deputy DeRosier were a part was designed to take Lankford into protective custody pursuant to Wash. Rev. Code (RCW) § 71.05.153. This statute authorizes officers to take an individual into protective custody for the purposes of obtaining mental health treatment if the officer has reasonable cause to believe that the person is suffering from a mental disorder and presents an imminent danger of serious harm. § 71.05.153(2)(b). As discussed above, the officers conducted the sweep of Lankford's room at the direction of their superiors and acted reasonably in so doing.

Because Officer Petlovany and Deputy DeRosier are protected by state qualified immunity, they are entitled to summary judgment on the state law trespass claim.

**B.     Respondeat Superior Liability**

Lankford asserts claims against Washington State and Whitman County for all claims alleged against Officer Petlovany and Deputy DeRosier under a theory of respondeat superior. Because Lankford's claims for conversion and false arrest and imprisonment fail as a matter of law, this section addresses only the § 1983 claims and the state law trespass claim.

Lankford's § 1983 claims against the State of Washington fail because the state is not a suable "person" under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Lankford's § 1983 claims against Whitman County also fail because—although municipalities and other non-state government agencies are suable "persons" under § 1983—a plaintiff must allege more than mere respondeat superior liability to establish a § 1983 claim. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978). Accordingly, Lankford's § 1983 claims against Whitman County and Washington State fail.

However, Whitman County and Washington State are not immune from suit on Lankford's state law trespass claim. Defendants assert that the state cannot be held liable on a theory of respondeat superior when the individual officer is immune. In support of this argument, Defendants cite to *Guffey v. State*, 690 P.2d 1163 (Wash. 1984). However, the holding in *Guffey* was effectively overruled by the Washington State Supreme Court's decision in *Savage v. State*, 899 P.2d 1270

(Wash. 1995). Lankford's state law trespass claims may serve as a basis for liability for Washington State and Whitman County under a theory of respondeat superior liability.

Lankford moves for summary judgment in his favor on the state law claims. However, Lankford is not entitled to summary judgment because issues of material fact remain as to the SWAT officers' state of mind and the damages suffered. Because the facts taken in the light most favorable to the non-moving party do not necessarily support a finding of liability for trespass, Lankford is not entitled to summary judgment on this issue.

Accordingly, **IT IS HEREBY ORDERED**:

1. Petlovany & Washington State's Motion for Summary Judgment, **ECF No. 59**, is **GRANTED** (as to the Fourth Amendment claims and state law claims for conversion and false arrest and imprisonment) and **DENIED** (as to the claim for respondeat superior liability for trespass).

2. DeRossier & Whitman County's Motion for Summary Judgment, **ECF No. 49**, is **GRANTED** (as to the Fourth Amendment claims and state law claims for conversion and false arrest and imprisonment) and **DENIED** (as to the claim for respondeat superior liability for trespass).

3. Lankford's Motion for Partial Summary Judgment against Whitman County, **ECF No. 53**, and Motion for Partial Summary Judgment against Washington State, **ECF No. 126**, are **DENIED**.

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this 1st day of March 2018.

*[signature]*
SALVADOR MENDOZA, JR.
United States District Judge